

NEUFELD
SCHECK
BRUSTIN
HOFFMANN &
FREUDENBERGER, LLP

October 10, 2024

**VIA ECF**
Magistrate Judge Mark W. Pedersen
100 State Street
Rochester, NY 14614

**Re:**    *Hall, et al.*, *v. Warren et al.*, No. 21-CV-6296 (FPG)(MJP)

Dear Judge Pedersen,

Plaintiffs write to respectfully request a hearing concerning (a) the conflict of interest in the Corporation Counsel's joint representation of the City of Rochester, and former Mayor Lovely Ann Warren and former Chief of Police La'Ron Singletary; (b) the antagonistic defenses of defendants Warren and Singletary; and (c) the rule against a lawyer acting as an advocate in a matter in which the lawyer is likely to be a witness on a significant issue of fact. Plaintiffs raise these issues to ensure the integrity of these proceedings and to protect the final judgment or resolution in this important matter from an after-the-fact challenge by Individual Defendants or the City of Rochester.

As your Honor is aware, two of the principal Defendants in this case are former Mayor Warren and former Chief of Police Singletary. These two Defendants are jointly represented by Rochester Corporation Counsel Patrick Beath and Municipal Attorney Patrick Naylon. These same lawyers represent the City of Rochester, against which Plaintiffs have brought several direct municipal liability claims. D.E. 47 (Am. Compl) ¶¶ 423–432 (First Claim for Relief), ¶¶ 433–447 (Second Claim), ¶¶ 448–449 (Third Claim). This joint representation raises serious concerns of an impermissible conflict of interest because the City, Warren, and Singletary have antagonistic defenses and have publicly accused each other of false statements concerning important facts underlying this lawsuit.

Substantial claims in this case rest on the City's response to the events following the killing of Daniel Prude. As was widely reported in news, former Chief Singletary and several command staff were forced out in the wake of the release of footage of Mr. Prude's death. *See, e.g.* "Rochester Police Chief Resigns After Accusations of Cover-Up in Prude Case," N.Y. Times (Sept. 8, 2020); "Rochester Mayor Fires Police Chief Amid Leadership Shake-Up over Daniel Prude's Death," ABC News (Sept. 14, 2020). **After his termination, Chief Singletary sued the City and Mayor Warren *personally* for wrongful termination.** Chief Singletary alleged that Mayor Warren and other City officials, among other misdeeds, made "false statements and materials omissions about my performance and discharge of duties" including about his communications with Mayor Warren during the relevant time period and in relation to relevant events in this lawsuit. *See* Ex. A (Singletary Complaint). For example, Singletary alleged that Mayor Warren asked him to withhold truthful information from the City Council's investigation into the Daniel Prude matter and instead provide false information, and that he "repeatedly refused to lie" for her. *Id.*

In response to Singletary's lawsuit, the City released the following statement:

> As detailed in recent court proceedings reported today involving other officers, there has been a legacy in the Rochester Police Department of untruthfulness. Mr. Singletary's testimony to the Special Counsel detailed his own inability to tell the truth, as a simple viewing of his testimony under oath clearly shows. Mr. Singletary failed in his duties as Chief and was rightfully terminated due to those failures.[1]

Attorneys from the office of the Corporation Counsel represented the City in defending against (and ultimately settling) Singletary's lawsuit. Those same lawyers are now jointly representing the City, Warren, and Singletary in this lawsuit, which encompasses some of the same events and facts underlying the claims in Singletary's lawsuit against the City and Warren.

In *Dunton v. Suffolk County*, the Second Circuit explicitly recognized that in cases involving § 1983 *Monell* claims, the interests of municipalities and individual defendants can come into conflict. 729 F.2d 903 (2d Cir. 1984). That is because "[a] municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties." *Id.* at 907. **The Second Circuit thus held that, "[w]here a conflict is serious and disqualification might be warranted, the district court is under a duty to ensure that the client fully appreciates his situation.**" *Id.*; *see, e.g.*, *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, No. 00-CV-4384 (ILG), 2001 WL 984933, *3 (E.D.N.Y. July 17, 2001) (ordering hearing to "ensure that the individual defendants are properly advised" after plaintiff moved to disqualify corporation counsel from representing individual and municipal defendants). This duty is critical, even now, because an unresolved conflict of interest can later entitle a defendant to a new trial. *See Dunton*, 729 F.2d at 910 (granting new trial because county attorney's conflict prejudiced defendants); *see also, e.g.*, *Marderosian v. Shamshak*, 170 F.R.D. 335, 342 (D. Mass. 1997) (granting relief from judgment and a new trial where defendant chief of police's interests "may have been prejudiced by the actual conflict of interests created by Town counsel's simultaneous representation of him and the Town").

Here, Plaintiffs' *Monell* claims are based, at least in part, on the actions and inactions of Defendants Warren and Singletary in their former capacities as policymakers for the City and the Rochester Police Department (RPD). *See, e.g.*, D.E. Am. Compl. ¶ 442 ("Defendants Warren and Singletary[] have known about the widespread practice of RPD officers using force without justification, but have failed to take any affirmative steps to end the practice—like disciplining officers who use excessive force.").[2] Plaintiffs also have claims against other RPD officers, like

---

[1] Andrew Hyman, *Former RPD chief files lawsuit against Warren, City of Rochester*, WHAM News 10 (Sept. 1, 2021) (https://www.whec.com/archive/former-rpd-chief-files-lawsuit-against-warren-city-of-rochester/).

[2] The actions and inactions of Defendants Warren and Singletary are also critical to Plaintiffs' First Class Claim. *See, e.g.*, Am. Compl. ¶¶ 394–95 ("This disproportionate treatment was a result of the policies, practices, and customs of the RPD Defendants…and the deliberate indifference to those policies by City officials, specifically LOVELY ANN WARREN and LA'RON SINGLETARY, who were responsible like

Defendant Matthew Drake, relating to their unconstitutional use of force and the Department's failure to discipline those officers. That alone raises serious concerns about conflicts of interest between the Individual RPD Defendants, the Mayor, and the City. *See, e.g.*, *Manfredi v. Town of Greenburgh*, No. 08-CV-7572 (CS), 2009 WL 10739943, at *3–4 (S.D.N.Y. Apr. 3, 2009) (independent counsel required in case where "the issue of whether appropriate internal review systems were in place [would] be in question" as the attorney "in gathering sufficient information to formulate arguments[] would be obtaining confidences from his clients which might later pose serious ethical difficulties [and] police officers might not be able to be completely open and honest with their own counsel, considering that such counsel might very well end up using the information to defend [the town] at their expense").

But there's significantly more reason to be concerned here given the serious history of animosity and finger-pointing between former Mayor Warren, former Chief Singletary, and other City officials regarding the City's response to Mr. Prude's killing and the protests that followed. As noted above, Chief Singletary accused Mayor Warren of "false statements and materials omissions about my performance and discharge of duties"; and the City publicly accused Mr. Singletary of committing perjury: "Mr. Singletary's testimony to the Special Counsel detailed his own inability to tell the truth."

In addition to the conflict in the joint representation of the City, Singletary and Warren, there is a problem with Attorney Patrick Beath serving as an attorney for these parties given that he is a percipient witness to several critical events in the case. Two investigations into the Daniel Prude matter—a management review by the City and an independent investigation by Special Counsel Emery Celli Brinckerhoff Abady Ward & Maazel LLP —**both determined that then-Deputy, now Corporation Counsel Patrick Beath was privy to certain key communications after Mr. Prude's death.** For example, Attorney Beath was on an April 10 text message from Defendant Singletary regarding the Medical Examiner's finding that Mr. Prude's death had been a homicide; Attorney Beath was also the first City official outside the RPD to view the body-worn camera footage of Mr. Prude's death; and Attorney Beath was even deposed as part of Emery Celli's independent investigation into the City's response to the death of Daniel Prude.

Mr. Beath later represented the City in Singletary's lawsuit, and now represents Warren, Singletary, and the City in this matter. As a result, the ethical issues and potential conflicts are not hypothetical or speculative, but rather actual and significant. Indeed, the New York Rules of Professional Conduct direct that a lawyer "shall not represent a client if a reasonable lawyer would conclude that…the representation will involve the lawyer in representing differing interests" or there is "a significant risk that the lawyer's professional judgment…will be adversely affected by the lawyer's [] other personal interests." RPC 1.7(a); *see also Ceglia v. Zuckerberg*, No. 10-CV-569A(F), 2012 WL 12995636, at *14 (W.D.N.Y. June 28, 2012) ("An established ground for disqualification is concurrent representation in which an attorney simultaneously represents one existing client in a matter that is adverse to another existing client."); N.Y.R. Prof. Con. Rule 3.7(a) ("A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact….").

---

the creation, implementation, supervisions, and/or deliberate indifference of those policies, practices, and customs during the First Class Period.").

Attorney Beath is obviously aware of the significant inconsistencies in accounts given by Individual Defendants Warren and Singletary and his continued representation of these Defendants along with the City conflicts with his obligations to the various parties. *See* N.Y.R. Prof. Con. Rule 1.9 (prohibiting a lawyer from using confidential information relating to the representation of a former client to the disadvantage of the former client). Attorney Beath cannot simply erase this information from his memory, and it would be reasonable for Individual Defendants, like Singletary, to come to fear that any such information may influence his handling of the case on the City's behalf going forward. Although the City has represented to Plaintiffs that it received a waiver from Singletary, the context and content of that waiver has not been disclosed to the us, nor (to our knowledge) has any waiver been obtained from Warren or any of the other Individual Defendants. The emergence of this sort of adverse interest or limitation on joint representation in *Monell* cases is precisely the tension recognized in *Dunton* that requires resolution by the Court.

Plaintiffs have brought claims of serious, ongoing constitutional violations by the City of Rochester and its officials, both former and current. They clearly have a compelling interest in ensuring the integrity of the final resolution of this case. Under these circumstances, the Court must inquire into the ongoing conflicts, determine whether they are actually waivable, and, if so, ensure that all Defendants—particularly Singletary and Warren—have properly consented to them (if this is even a conflict that can be waived). *See, e.g.*, *Manfredi*, 2009 WL 10739943 at *4 (requiring town to provide independent counsel to police officers given the "strong possibility of conflict" in case involving § 1983 claims of excessive force and municipal liability).

To that end, Plaintiffs respectfully request that this Court hold a hearing to ensure that any conflicts of interest present in this case do not threaten the integrity of the final judgment or resolution, including by ensuring that each Defendant receives adequate and conflict-free representation—whether through Corporation Counsel or independent counsel hired to defend them.

Respectfully submitted,

By: /s/ Nick Brustin
Nick Brustin
Anna Benvenutti Hoffmann
Katie McCarthy
Sophia Villarreal
NEUFELD SCHECK BRUSTIN
HOFFMANN & FREUDENBERGER, LLP
200 Varick Street, Suite 800
New York, New York 10014
anna@nsbhf.com
nick@nsbhf.com
katie@nsbhf.com
sophia@nsbhf.com

*Attorneys for Plaintiffs*