UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY HALL, STANLEY MARTIN, NICHOLAS ROBERTSON, DEVORAH CHATMAN, REYNALDO DEGUZMAN, EMILY GOOD, WINONA MILLER, DYNASTY BUGGS, LORE MCSPADDEN-WALKER, EMILY MCINTYRE, FREE THE PEOPLE ROC, and NATIONAL LAWYERS GUILD ROCHESTER, INC., *on behalf of themselves and other people similarly situated*, <br><br>         Plaintiffs, <br><br> -against- <br><br> LOVELY ANN WARREN, LA'RON SINGLETARY, HENRY C. FAVOR, RAYMOND W. DEARCOP, RALPH MONTINARELLI, SAMUEL LUCYSHYN, RANDY POTUCK, WILLIAM BAKER, ALEXANDER ELMORE, JOHN CLINKHAMMER, DOMENIC BORRELLI, MATTHEW DRAKE, DAKOTA VANBREDERODE, ETHAN PASZKO, STEPHEN BOILY, TODD BAXTER, STEPHEN A. DELLASALA, THE CITY OF ROCHESTER, COUNTY OF MONROE, MONROE COUNTY SHERIFF'S OFFICE, "JOHN DOE" ROCHESTER POLICE DEPARTMENT OFFICERS 1–200 (the names and numbers of which are currently unknown), and "RICHARD ROE" MONROE COUNTY SHERIFF'S DEPUTIES 1–200 (the names and numbers of which are currently unknown), <br><br>         Defendants. | No. 6:21-cv-6296 (FPG) <br><br> **PROTOCOL AND ORDER GOVERNING DISCOVERY** |

  The Court orders that Plaintiffs Anthony Hall, et al. ("Plaintiffs") and Defendants Lovely Ann Warren, et al. (collectively, "Defendants"; Plaintiffs and Defendants are, collectively, "Parties," and individually, a "Party") follow this protocol ("Protocol") for the production of discoverable documents originating from hard copy sources and as electronically stored information ("ESI") pursuant to the Federal Rules of Civil Procedure ("FRCP").

**General Provisions**

1. As used herein, "Requesting Party" means the party requesting production of documents. As used herein, "Producing Entity" means the party or third party that may be producing documents in response to the request of Requesting Party. As used herein, the words "Party" or "Parties" include the Requesting Party and the Producing Entity.

2. This Protocol applies to the ESI provisions of FRCP 16, 26, 33, 34, and 37. This Protocol also applies to FRCP 45, if agreed to by the recipient of any document request or subpoena issued pursuant to that rule, in all instances in which the provisions of FRCP 45 are the same as, or substantially similar to, the provisions of FRCP 16, 26, 33, 34, and 37. Nothing in this Protocol shall be deemed to prevent any Parties from agreeing to terms different than or inconsistent with the terms of this Protocol.

3. Nothing in this Protocol shall be deemed to constitute a waiver of any objections a Producing Entity may have with respect to any document request.

4. This Protocol is intended to be consistent with FRCP 26(b)(1). Nothing in this Protocol shall obligate a Party to preserve ESI outside the scope of permissible discovery under FRCP 26(b)(1).

5. **Metadata Production**. The Producing Entity shall preserve **all metadata** for documents produced. Given the **unique circumstances of this case, which involve ESI sources beyond typical emails**, it is essential to produce metadata fields that are critical to understanding context, such as **timestamps, custodian information, and system-generated identifiers**. **Some metadata, such as email addresses and timestamps, will be inherent in the PDFs produced, and these fields shall be preserved and made available as needed**.

**Documents From Hard Copy Sources**

6. **Form of Production.** The Parties will produce documents originating from hard copy sources ("Hard Copy Documents") and attachments in Group IV single-page PDF or TIFF format (black and white, 300 dpi) with corresponding searchable OCR text, along with the below-listed metadata fields when available. The Parties will provide a standardized load file compatible with Relativity and with a Bates number field included in the load file to match text and metadata with PDF or TIFF images. The load file shall correspond to the technical specifications of Appendix A.  With respect to Hard Copy Documents, data in the load file will include: a. Beginning Document Bates Number; b. Ending Document Bates Number; c. Beginning Family Bates Number (the first page of the first document in a family); d. Ending Family Bates Number (the last page of the last document in a family); e. Custodian or Source; f. All Custodians; g. Confidentiality Designation; h. Redacted (Y/N); and i. Text File Path (providing the location in the production load file for the text file).

**Electronically Stored Information:**

7. **Identification of Responsive Documents.** The Producing Entity shall conduct a reasonable and good faith search for potentially responsive documents and ESI under the FRCP and shall undertake a good faith effort to segregate ESI that is not subject to discovery. To filter ESI for relevancy prior to review and production, a Producing Entity may, among other things, do one or more of the following, so long as the process used meets the standard of care promulgated in FRCP 26(g): (i) use keyword search terms that it in good faith believes will capture responsive ESI and review search term hits for responsiveness; (ii) limit the collection and review of ESI to the custodians and data sources (e.g., IAPro, LERMS) the Producing Entity reasonably believes have unique documents responsive to the document

requests; (iii) limit the collection and review of ESI to a reasonable date range based on the claims asserted; or (iv) use technology assisted review ("TAR") techniques.

    a. The Parties will meet and confer and attempt in good faith to reach agreement regarding the scope of preservation, search methods used to identify and search ESI for potentially responsive documents, custodians, data sources, and a reasonable date range.

    b. Should the Producing Entity decide to use search terms, it will propose an initial list of keyword search terms to the Requesting Party. The Requesting Party shall have the opportunity to provide input on the initial list of search terms and any Technology Assisted Review (TAR) techniques used for culling ESI.

    c. **Any TAR methodologies used to cull or eliminate documents must be disclosed** to the Requesting Party prior to implementation. **If TAR is used solely for prioritizing documents, there is no requirement for disclosure. However, if TAR is used for culling or removing documents from the review universe, a meet-and-confer must be held** to ensure transparency and mutual understanding.

    d. Nothing in this Protocol shall prevent any Party from conducting a manual review of documents after application of any search methodologies for responsiveness, privilege, and confidentiality. e. If the Parties meet-and-confer in good faith and fail to reach agreement regarding search and culling methodologies, each Party may seek relief from the Court.

8. **Form of Production.** Except for those documents noted in Paragraphs 10 and 21 of this Protocol, the Parties will produce documents originating as ESI in Group IV single page PDF or TIFF format (black and white, using Group 4 compression with at least 300 dpi) with

extracted text (where not subject to claims of privilege or the work product doctrine), along with the below-listed metadata fields when available. After initial production in image file format is complete, a Party must demonstrate particularized need for production of ESI in its native format.

9. **Native File Production**: To ensure that **complex file types are properly understood**, spreadsheets (e.g., Excel), presentations (e.g., PowerPoint), and other documents that do not convert well to PDF or TIFF **should be produced in their native format if there is a particularized need**. **In this case, such needs may arise when formulas, dynamic elements, or specific functionalities cannot be retained in a PDF or TIFF format**. Native production will be determined on a case-by-case basis. For documents requiring redaction, **the Parties may discuss producing redacted versions in PDF format as an alternative.**

10. **(a) <u>Body Worn Camera Footage</u>.** The Producing Entity shall preserve **all metadata** for documents produced. Given the **unique circumstances of this case, which involve ESI sources beyond typical emails**, it is essential to produce metadata fields that are critical to understanding context, such as **timestamps, custodian information, and system-generated identifiers**. **Some metadata, such as email addresses and timestamps, will be inherent in the PDFs produced, and these fields shall be preserved and made available as needed.**

**(b) Email.** Emails shall be produced in their native format, including all associated metadata. Any redactions to emails will be applied natively, and the redacted documents should be clearly marked. Each produced native file shall be named with a unique production number (e.g., [Party]_[UniqueID].eml). If a claim of attorney-client privilege, attorney work product protection, or any other privilege, protection, or immunity from discovery applies, the parties

may produce the emails in PDF or TIFF format, with appropriate redactions in accordance with Section 8.

**11. Time Zone.** To the extent reasonably practicable, ESI shall be processed and standardized to the Coordinated Universal (UTC) time zone.

**10. Redactions.** In the event that the Producing Entity finds that redactions are needed to protect from disclosure documents and ESI subject to the attorney-client privilege, work product doctrine, or any other applicable privilege, legal requirement, or immunity, documents may be produced with redactions in PDF or TIFF format with corresponding redactions in the searchable OCR text and the associated metadata for the document, ensuring the redacted content is fully protected from disclosure. In the event that the Producing Entity finds the redaction of certain documents in image form to be overly burdensome, it may elect to redact such documents in their native form. Any metadata fields for redacted documents that would reveal privileged information shall be excluded. The Parties may redact (i) information that is privileged or protected from discovery as work product or by reason of any other applicable privilege or immunity; (ii) information subject to non-disclosure obligations imposed by governmental authorities, law or regulation (e.g., protected personal information); or (iv) sensitive, non-relevant information, including, but not limited to, trade secrets, or information regarding products, data, or people, within documents that contain relevant information.

11. **Color/Pictures.** Notwithstanding the form of production identified in Paragraph 5 and 7, the Parties will produce color images of electronic documents containing color where color versions are necessary to adequately understand the document. If good cause exists for the Requesting Party to request production of certain documents that were produced in black-

and-white in color, the Requesting Party may request production of such documents in color by providing (i) a list of the Bates numbers of documents it requests to be produced in color format; and (ii) an explanation of the need for production in color format. The Parties may produce pictures in native format, color TIFF, color PDF, or JPEG format when color images are reasonably available. To the extent pictures are not produced in color, the Parties will accommodate reasonable and proportional requests for the production of color pictures on a case-by-case basis.

12. **Body Worn Camera Footage:** Body-worn camera footage shall be produced with full metadata, including but not limited to timestamps, officer identification, GPS coordinates (if available), and any other metadata generated by the body-worn camera system. All redactions must be clearly noted in the accompanying load file. Plaintiffs reserve the right to request unredacted versions of such footage if no applicable privilege applies.

   13. **Deduplication.** The Parties may perform de-duplication of ESI within and across custodians according to MD5 or SHA-1 hash values and produce only a single copy of identical ESI. De-duplication shall not break up document families. The Producing Entity shall not withhold an attachment as duplicative if the full family is not duplicative of another full family. All custodians of a de-duplicated document must be identified in the "All Custodians" metadata field specified in Paragraph 7. If the Parties de-duplicate ESI, they shall provide custodian associations in a semi-colon delimited field that includes duplicate custodian name information for the duplicate custodians. No later than the substantial completion of document production, the Parties will provide an overlay data file if needed to account for updated duplicate custodian information in the Duplicate Custodian field.

14. **Parent-Child Relationships.** Parties shall preserve parent-child relationships (the association between an attachment and its parent document) where possible. The Parties will provide a Beginning Family Bates Number and Ending Family Bates Number for each produced document in the data load file. The parties agree that the extraction of MS Office embedded images, MS Office embedded objects and email inline images is not required.

15. **Bates Numbering.** The Parties shall assign a Bates number to individual pages of PDF or TIFF documents and a Bates number to each document and its associated placeholder image produced in native format. Bates numbers shall be unique across the entire document production and sequential within a given document and document family.

16. When documents produced in accordance with this Protocol are used in any proceeding herein, including depositions, hearings, or trial, the Bates stamped production image of documents as described in Paragraph 6 shall be the copy used, if available. Where the document to be used was produced in native format, the Party intending to use the document may create an image of such document so long as (a) the image generated by the Party includes the Bates number and confidentiality designation assigned to the document at the time of production, (b) the image generated by the Party is clearly marked as one that was produced in native format, (c) the Party using the image verifies that the image is authentic to the document as produced in native format, and (d) if the image generated by the Party excerpts information from the native document, the image is clearly marked as an "Excerpt." Extracted text files shall not be used in any proceeding

as a substitute for the image of any document. This Paragraph does not apply to any summary exhibits or demonstratives under FRCP.

17. Unless otherwise ordered by the Court, each Party will bear the costs to process and review its own documents according to this Protocol. Notwithstanding this Paragraph, nothing in this Protocol limits or prohibits a prevailing party from seeking recovery of all allowable fees and costs, including attorneys' fees and costs, as may be permitted under applicable law and the FRCP.

18. Nothing in this Protocol shall be construed to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.

19. Nothing in this Protocol shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time in accordance with the applicable FRCP.

**Production of Databases and Other Structured Data**

20. Where a discovery request requires production of structured data, the Parties shall meet and confer to determine the most reasonable format of production based on the specific circumstances and the content and format of a data extraction from such structured data source. The Parties reserve all rights to object, including but not limited to objections for relevance, undue burden, and/or inaccessibility.

21. For structured data systems such as IAPro and LERMS, Defendants shall provide metadata along with reports or data produced. This includes, but is not limited to, timestamps, officer names, and any system-generated metadata that tracks the creation

and modification of reports. The Parties will meet and confer to ensure all relevant metadata is preserved and produced.

22. If ESI in commercial or proprietary database format can be produced in an already existing and reasonably available report form, the Parties will produce the information in such a report form, in the reasonably usable format (e.g., Excel, CSV, PDF, TIFF or other image format). If an existing report form is not reasonably available, the Parties will meet and confer to attempt to identify a mutually agreeable form of production.

**Other Data Sources**

23. The Parties share a desire to ensure that ESI is produced in an acceptable, searchable format. The Parties recognize that certain, limited ESI may not be amenable to the proposed technical specifications. The Parties will meet and confer in good faith to attempt to reach agreement regarding these issues and the appropriate form of production and will seek Court intervention if necessary.

**Confidentiality Designation**

24. If a particular document has a confidentiality designation, the designation shall be stamped on the face of all PDF or TIFF images pertaining to such document, in the lower left-hand corner of the Document, or as close thereto as possible while preserving the underlying image. To the extent responsive documents are produced in native format, confidentiality designations will be identified in the file name and on the placeholder PDF or TIFF image, unless native redactions are employed.

**Assertion of Privilege**

25. The Parties may withhold documents from production by designating the documents privileged pursuant to a claim of attorney-client privilege, work product protection, or

other applicable privilege or immunity. Where a fully privileged or protected document is being withheld from production and is in a document family with relevant, non-privileged documents, the privileged document will be replaced in the production with a placeholder image stating that the privileged document is being withheld from production. For such documents, the only metadata fields that need to be provided in the load file are the Bates number fields. a. Nothing in this Paragraph is intended to or will limit the protection of Federal Rule of Evidence 502(d). b. **Privilege Logs.** To the extent ESI is withheld from production on the basis of the attorney-client privilege or the work product doctrine, the Producing Entity shall produce a privilege log of withheld documents within a period of time as determined by the parties. Prior to generation of a privilege log, the Parties shall meet and confer in a good faith effort to reach agreement on the manner in which a privilege log will be generated and the contents of such a log. The parties shall consider whether the nature and volume of the privileged documents and ESI warrants category-by-category privilege logs, document-by-document privilege logs, metadata log, or some combination of these approaches. Privilege logs shall be produced within 30 days of production. The Parties may use categorical privilege logs when appropriate but must still provide sufficient detail for the Requesting Party to assess claims of privilege. c. The following documents presumptively need not be included on a privilege log:

1. Communications exclusively between a Party and its outside counsel regarding this litigation.
2. Work product created by outside counsel, or by an agent of outside counsel other than a Party, testifying expert, or third-party vendor, regarding this litigation.

**Burden; Deficiency Procedure**

26. If the forms of production allowed by this Protocol present an undue burden or cost for a Producing Entity, the Parties shall meet and confer to try to agree on a reasonable, alternative form of production.

27. Given the significant resource disparity between Plaintiffs and the Defendants, the Parties agree that Defendants will bear the costs of producing ESI from larger, more complex systems (e.g., IAPro, LERMS, body-worn camera footage) if Plaintiffs can demonstrate that such production would otherwise be unduly burdensome.

28. If, after meeting and conferring in good faith with the Producing Entity, the Requesting Party has good cause to believe that a Producing Entity's discovery efforts with respect to the collection, review or production of ESI have been deficient, the Requesting Party will file a motion with the Court for the purpose of resolving the disagreement.

**SO ORDERED**

Dated: February 24, 2025
      Rochester, N.Y.

_____
MARK W. PEDERSEN
United States Magistrate Judge

**Appendix A**
Load File Technical Specifications

1. Image Files
   a. Images shall be produced as black-and-white single-page Group IV compression PDF or TIFF images using a print setting of at least 300 DPI.
   b. Each image shall have a unique file name, identical to the Bates number of the document.
   c. Produced PDF or TIFF images will show all text, including any track changes, comments or hidden items. PDF or TIFF image files should be provided in an "Images" folders on the provided media, with no more than 5,000 files per folder.
   d. Original document orientation shall be maintained.

2. Image, Cross Reference and Metadata Load Files
   a. Documents should be provided with Concordance-compatible image and data load files (i.e., .OPT and DAT files) using standard Concordance delimiters.
   b. Every document referenced in a production image load file shall have all corresponding images, text, and data. Redacted text shall not be included in a redacted document's text file.
   c. Information cross-referencing text files with their location on the media shall be provided in an .LST file, or in the "TextPath" field in the data load file.
   d. The name of the image load files and cross reference files shall mirror the name of the delivery volume; volume names shall be consecutive (e.g., ABC001.LOG, ABC001.LST).

3. The metadata load file shall use the following standard Concordance delimiters:
   a. Field Delimiter: ¶ (ASCII 020)
   b. Text Qualifier: þ (ASCII 254)
   c. Multi-value Delimiter: ; (ASCII 059)

4. Metadata fields that are not applicable to a document or are NULL shall be left with null values and not populated with fillers or spaces.