UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY HALL, STANLEY MARTIN, NICHOLAS ROBERTSON, DEVORAH CHATMAN, REYNALDO DEGUZMAN, EMILY GOOD, WINONA MILLER, DYNASTY BUGGS, LORE MCSPADDEN-WALKER, EMILY MCINTYRE, FREE THE PEOPLE ROC, and NATIONAL LAWYERS GUILD ROCHESTER, INC., *on behalf of themselves and other people similarly situation,* | **CONFLICT MEMORANDUM OF LAW**<br><br>**Case No. 6:21-CV-6296 (FPG)** |
| Plaintiffs, | |
| v. | |
| LOVELY ANN WARREN, LA'RON SINGLETARY, HENRY C. FAVOR, RAYMOND W. DEARCOP, RALPH MONTINARELLI, SAMUEL LUCYSHYN, RANDY POTUCK, WILLIAM BAKER, ALEXANDER ELMORE, JOHN CLINKHAMMER, DOMENIC BORRELLI, MATTHEW DRAKE, DAKOTA VANBREDERODE, ETHAN PASZKO, "JOHN DOE" ROCHESTER POLICE DEPARTMENT OFFICERS 1-200 (the names and numbers of which are currently unknown), TODD BAXTER, THE CITY OF ROCHESTER, COUNTY OF MONROE, "RICHARD ROE" MONROE COUNTY SHERIFF'S DEPUTIES 1-200 (the names and numbers of which are currently unknown), STEPHEN A. DELLASALA, "SALLY SUE" NEW YORK STATE POLICE OFFICERS 1-200 (the names and numbers of which are currently unknown), | |
| Defendants. | |

**PRELIMINARY STATEMENT**

Plaintiffs are asserting the Corporation Counsel's Office has a conflict of interest in representing the City, its former Police Chief and former Mayor because of a dispute as to who told who what about a case that is not being litigated in this action. Plaintiffs rely upon two distinct theories; a) a prior law suit by Mr. Singletary vs the City of Rochester and Lovely Warren concerning the terms of his termination of employment with the City, and b) the disagreement between the former Mayor and Chief of Police regarding the timing and nature of

1

the transmission of information after the well publicized incident concerning Daniel Prude; i.e., not the propriety of what occurred, but the timing and manner of communications about the incident after it occurred.

Defendants provide this memorandum of law in opposition and in advance of the "*Dunton*" hearing scheduled for March 11, 2024.

## PROCEDURAL BACKGROUND

This action was commenced on April 5, 2021 via the filing of a complaint against former Mayor Lovely Warren, former Police Chief La'Ron Singletary, the City of Rochester, as well as other officers of the Rochester Police Department, i.e., the City defendants. Monroe County, the Monroe County Sheriff, and other individual defendants were named. The City defendants moved to dismiss on June 14, 2021. Plaintiff's filed an Amended Complaint on August 31, 2021 and the City defendants again moved to dismiss on November 10, 2021. That motion was granted in part and denied in part by Decision and Order dated June 30, 2022. (Dkt. 94.). The City defendants filed their answer on September 30, 2022. (Dkt. 119). On 10/14/2022 Patrick. B. Naylon, Esq. substituted in as counsel for the City defendants. Soon thereafter, in December 2022 the case was referred for mediation. See Docket entries 128 – 132. Mediation was suspended and the matter referred to Magistrate Pedersen on May 3, 2024. See Docket 135. Court conferences concerning various discovery matters were held thereafter and at an October 30, 2024 conference the court authorized plaintiff to file a motion to disqualify, if necessary, after December 11, 2024. (Docket # 168.)

Despite the fact that the plaintiffs never filed a motion to disqualify, following a February 11, 2025 court conference, the court ordered a "*Dunton*" hearing for March 11, 2025. Plaintiff's filed a Memorandum Brief regarding the conflict issues on February 25, 2025 (Dkt #198) and

defendants filed correspondence mandating the hearing be conducted *Ex Parte* on February 3, 2025. (Dkt# 199)

City defendants now file this Memorandum in support of their position that no conflict warranting disqualification exists.

## THE CLAIMS IN ISSUE

Determination of the existence of a conflict must start with an analysis of the complaint itself and the claims made against the respective parties. The Plaintiffs seek to proceed via two separate and distinct class actions:

1) The first class seeks injunctive relief only versus the City, "specifically Lovely Ann Warren and La'Ron Singletary, who were responsible for the creation, implementation, supervision and deliberate indifference to those policies practices, and customs" of alleged disproportionate force versus people of color from 2018 to filing.

2) The second class seeks damages for various claims stemming from the 2020 protests as well as injunctive relief.

There are no allegations that either Lovely Warren or La'Ron Singletary personally arrested, used force, or was otherwise personally responsible for violating the rights of any individual in either the first or second class. Rather the claims are they are responsible for the official customs, policies or practices of the City of Rochester, which purportedly lead to the alleged violations.

As for specific causes of action, the first four claims for relief are *Monell* claims only. The fifth claim for relief against the City, Warren and Singletary and others is a second-class

3

claim that they engaged in policies that retaliated against Plaintiffs for their exercise of their First Amendment rights. The sixth claim for relief against the City and Singletary and others is a second-class equal protection claim relative to the use of force at the protests. The seventh claim for relief against all Defendants, excluding Trooper Dellasala, is a second-class case for excessive force. The eighth claim for relief against the City, Warren, Singletary and the County is a second-class case for conspiracy to violate constitutional rights. The remaining claims are not asserted against the City, Warren or Singletary.

## UNCONTESTED FACTS

Neither Lovely Warren or La'Ron Singletary personally engaged in any actual use of force or arrest of any individual, named or unnamed. Both Lovely Warren and La'Ron Singletary are no longer employed by the City of Rochester.

Lovely Warren and La'Ron Singletary are in agreement as to the policies, procedures and tactics used at the 2020 protests, as well as the policies, practices and procedures of the Rochester Police Department governing the use of force for the period 2018 until the earlier of commencement or their departure from City government.

## CITY POSITION AS TO LOVELY WARREN & LA'RON SINGLETARY

As to any *Monell* claims and all claims against the City, as well as Mr. Singletary and Ms. Warren in their individual or personal capacity, the City of Rochester agrees that they both were at all times acting within the scope of their employment and in accordance with the policies, practices and procedures of the City of Rochester.

The City of Rochester is indemnifying both Lovely Warren and La'Ron Singletary for all claims and damages, including punitive damages as to any and all claims against them in this action.

## ALLEGED CONFLICT

Plaintiffs maintains a conflict exists for various reasons. The "*Dunton*" hearing presumably ordered as a result of the alleged "*Dunton*" conflict regarding representation of the City and defendant Warren and Singletary on the *Monell* claims. Another claim is that a conflict exists based upon the post-Prude disagreement the then Mayor and the Police Chief as to the passing of information concerning the incident by and between the Chief and the Mayor. Finally, the plaintiffs point to an action commenced by La'Ron Singletary versus the City of Rochester and the Mayor relating to the termination of his employment and the benefits he would receive as a result.

## CITY DEFENDANTS POSITION

**1) There is no *Dunton* conflict.**

As to the defense of the claims alleged against them, the City, Lovely Warren and La'Ron Singletary are all in agreement in their defense of this action that the policies, practices and procedures of the RPD from 2018 through the 2020 protests were in accordance with law and did not lead to the unequal enforcement of the law or disproportionate use of force against people of color. None of these Defendants intend in any way to point at the other as the reason or the cause for any alleged violation. Moreover, the City is indemnifying both Lovely Warren and La'Ron Singletary for all claims in this action including punitive damages.

2) **The Singletary Action**

The action by La'Ron Singletary was commenced versus the City and Lovely Warren. As the City had previously and continued to represent La'Ron Singletary in litigation, it determined the existence of a conflict and farmed that case out to Goldberg Segalla, LLP. That case was settled before issue was joined by and between the attorneys for the respective parties. Notably, that settlement was handled for the City and Lovely Warren by Patrick B. Naylon, Esq., now counsel for the City defendants in this action. Notably, no discovery took place, no answer was submitted, and Patrick B. Naylon will aver that no privileged information from any party was obtained during that process. Indeed, Mr. Singletary through his counsel in that matter consented to and executed a waiver for Mr. Naylon to represent Mr. Singletary in this matter. Accordingly, to the extent there may have been a conflict, it has been resolved.

3) **The Communications Issue Regarding the Prude matter.**

Notably, the Daniel Prude incident is not the subject of this law-suit. Indeed an action was commenced versus the City and involved officers. In that action, the City again found the existence of a conflict between the City and representation of certain individual officer defendants and obtained outside counsel to represent them. Lovely Warren and La'Ron Singletary were not defendants in that action. Moreover, that matter was resolved by the City of Rochester and the City and all of its employees have been released from any further liability with respect to any claims that might have exited in that case. The Prude incident and its aftermath certainly have nothing to do with the pre-Prude claims involving the purported First Class for which injunctive relief only is sought.

Moreover, while dissatisfaction over what happened to Mr. Prude may have been among the sparks for the protests which are the subject of the purported Second Class, the who told who

what when had nothing to do with the police response to the protests. Former Mayor Warren and former Chief Singletary have no disagreement as to the propriety of the police response. The alleged conflict arises from a difference of opinion, not as to what happened with respect to Daniel Prude or at the protests, but rather about communications after the Prude incident, i.e., who told who, what, when, about the incident. In short, Mr. Singletary and Ms. Warren did not agree as to those specifics and do not agree on those specifics to this day. They do not, however, disagree as to the what, why or how it occurred and indeed prior to the departure from the City of both Mr. Singletary and Ms. Warren, officers involved with the Prude incident were suspended.

Significantly, an extensive independent investigation by the New York State Attorney General noted Mr. Prude died of complications of asphyxia in the setting of physical restraint; excited delirium and acute phencyclidine intoxication with no evidence of trauma to Mr. Prude's windpipe. The OAG's own expert concluded the officer's conduct was well within the scope of reasonable police practices in the circumstances. Furthermore, the matter was submitted to a Grand Jury by the OAG and no-billed. The City defendants are aligned with that in their defense to this action.

Plaintiffs' argument that they need to explore the alleged 'cover-up' is without merit and irrelevant to the issues in this matter. Regardless, even assuming the court feels such a peripheral issue deserves some inquiry, the fact that the parties remember things differently and both feel they are correct does not create a conflict, as they have no disagreement as to the policies and procedures employed in the Prude incident or the protests. Indeed, it is not unusual at all to have parties or witnesses have different recall as to certain events. That alone does not create a situation where the parties have a differing interest in the defense of the case.

Who told who what when between March of 2020 and August of 2020 regarding the Prude incident is of no relevance to the issues raised in this case, i.e. the propriety of the force used either before or after the 2020 protests. Plaintiff wants to delve into the timing controversy and surely Mr. Singletary and Ms. Warren agree to disagree as to those facts. However, there is no reason in this matter to delve into that any further than the mere fact that they do disagree. Any further inquiry in the context of this case is irrelevant, immaterial and peripheral to the issues before this court.

## ARGUMENT

### The Standard

A strict standard of proof is required for disqualification because such motions are often brought for tactical purposes. *Intellipayment, LLC v Trimarco*, 2016 WL 1239261 @ *4 (E.D.N.Y. 2016) quoting *Evans v Artek Sys. Corp*. 715 F. 2d 788,791 (2d Cir 1983). Motions to disqualify are subject to strict scrutiny because of their potential for abuse as a tactical devise. *Muntz v Re Spec. Corp*. 230 F. Supp. 3d 147 , 154 (.S.D.N.Y. 2017) Indeed motions to disqualify are looked upon with disfavor because such motions, among other reasons, lead to an "immediate adverse effect on the client by separating him from counsel" *Bd. Of Educ. V Nyquist*, 590 F.2d 1241, 1246 (2d Cir 1979).

1) **There is no *Dunton* conflict.**

The Second Circuit recognized in *Dunton v County of Suffolk,* 729 F.2d 903 (2d Cir 1984 that following the Supreme Court's decision in *Monell v Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed. 2d 611 (1978), the interests of a municipality and individual employee defendants may be in conflict.  In short, the individual officer might be able to shift

liability to the municipality by indicating he or she was acting in good faith in accordance with policy. Or, as in *Dunton*, the municipality might shift liability to the individual employee by maintaining they were not acting in the scope of their employment. Indeed, in *Dunton*, the municipal attorney representing both the County and the employee officer defended the excessive force claim by maintaining the actions of the officer were purely personal and outside the scope of his employment. Clearly, the attorney could not fulfill the fiduciary responsibility to both clients in that circumstance and literally shifted blame from the County represented to the employee also represented.

Notably, *Dunton* did not create a *per se* rule and opted for a case by case determination noting the court is under a duty to ensure the clients are fully apprised and aware of a potential conflict that might warrant disqualification of counsel. See *Patterson v Balsamico*, 440 F.3d 104, 114 (2d Cir 2006).

Hence, as pointed out by Judge Payson in *Lieberman v City of Rochester*, et. al., 681 F. Supp. 418 (W.D. N.Y. 2010), where individual officers actually sought separate counsel from the City, District Courts require disqualification only in cases 'where counsel acts in a way that is actually against the" employees interests. *Id* @ 425. Judge Payson further cited cases where the Second Circuit declined to disturb jury verdicts against individual municipal employees jointly represented by the municipality absent "actual prejudice." *Id* @ 425 (citations omitted.) It is noteworthy that in this action the Corporation Counsel's office specifically moved to dismiss the action against Mayor Warren and La'Ron Singletary and anticipate further motion practice with respect to the claims against them in both their individual capacities as well as their official capacities. Likewise, counsel for the defendants is seeking any *Dunton* hearing be held *Ex Parte* to protect their privilege and discovery rights.

Just as in *Lieberman*, the Corporation Counsel here has determined that both Lovely Warren and La'Ron Singletary at all times were acting within the scope of their employment and in accordance with the policies of the City of Rochester. Obviously as to an injunction relating to RPD policies, practices and procedures, there is no conflict as any judgment would apply only to the City. Moreover, as to any judgment of liability, the City will be liable for any and all damages. The mere for potential for conflict is insufficient to require disqualification. *Id @ 425*.

Given the unity of interest and the fact the City is defending and indemnifying the individual defendants, here there is no *Dunton* conflict.

**2) The Parties do not have an adverse interest as to any issue material to this case.**

The court has inherent authority to address the issue of disqualification. *Hempstead Video Inc. v Inc. Vill of Valley Stream,* 409 F.3d 127, 132, (2d Cir. 2005). Disqualification has been ordered in two basic situations. Typically that is where an attorney's conflict of interest undermines the court's confidence in the vigor of the attorneys representation of his client or where the attorney may be in a potential situation to use privileged information concerning the other side through prior representation. See *Bobal v Rensselaer Polytechnic Inst*. 9116 F.2d 759, 764 – 65 (2d Cir 1990). Notably, the court's role is also to guard against the 'tactical' use of motions to disqualify and thus such applications are subject to strict scrutiny See *Murray v Metro Life Ins. Co.* 583 F.3d 173, 178 (2d Cir 2009); *Lamborn v Dittmer*, 873 F.2d 522, 531 (2d Cir 1989). Thus disqualification was denied in *Lieberman, supra.* as well as the case referenced by the plaintiffs *Robinson v New York, 2010 WL 2775850 (W.D.N.Y. 2010)*

> Disqualifying counsel has "a serious and immediate adverse effect by denying the client his choice of counsel." *Soc'y for Good Will to Retarded Children, Inc. v. Carey*, 466 F. Supp. 722, 724 (E.D.N.Y. 1979). Indeed, courts – which have wide discretion in deciding disqualification motions – should be "loathe to separate a client from" chosen counsel. *In re Bohack Corp.*, 607 F.2d 258, 263 (2d Cir. 1979). This fundamental precept, coupled with the risk for potential abuse of these types of

motions for "tactical purposes," is why motions for disqualification are subject to strict scrutiny in the federal courts. *See Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989). At bottom, motions to disqualify should only be granted where the court concludes that there is a "significant risk of trial taint." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981); *see also Galloway v. Nassau Cnty.*, No. 19-CV-5026 (AMD) (JMW), 569 F.Supp.3d 143, 2021 WL 5013735 (E.D.N.Y. Oct. 27, 2021). Thus, the movant shoulders a heavy burden, and must establish *specific facts* warranting the disqualification. *See Evans v. Artek Sys. Corp.,* 715 F.2d 788, 791, 794 (2d Cir. 1983)  *Griffin v County of Suffolk,* 2024 WL3675904 (E.D.N.Y. 2024)

As to the prior representation claim, that would apply only to the case of *Singletary v The City of Rochester and Lovely Warren.* That action was commenced and frankly related to Mr. Singletary's efforts to recover medical insurance benefits lost as a result of whether he was terminated versus resigned. Notably, there was no discovery and indeed issue was never joined as the action was resolved by the attorneys via a mediation process.  Mr. Singletary expressly waived in writing any conflict arising out of Mr. Naylon's representation of the City and/or Ms. Warren in that case. No privileged information was learned in the process by counsel as the matter was settled even before an Answer had to be prepared.

As to the vigor of representation, it should be noted that the City initially moved to dismiss the action versus Ms. Warren and Mr. Singletary. Ultimately, the question would be, assuming the court allows the plaintiffs to delve into the dispute between Singletary and Warren as to communications relating to the Prude matter, the City does not take and the defense does not believe taking a position as to who is or is not correct is even necessary in the defense to the claims in this action. The defense position is that it does not matter either way as it is a peripheral issue that does not impact liability issues in this action of any of the parties as none of them have any exposure in the Prude matter.

Ultimately, the exercise of the court's discretion in determining disqualification comes down to "whether the attorney suffers from an actual or potential conflict of interest" requiring a

11

"case by case determination. " *Patterson v Balsamico*, 440 F.3d 104, 114 (2d Cir. 2006). An actual conflict exists when the client's interests diverge with respect to a material factual or legal issue or to a course of action." *United States v Schwarz,* 283 F. 3d 76, 91 (2d Cir. 2002) (quoting *Winkler v Keane* 7 F.3d 304, 307 (2d Cir 1993) . In this action, certainly at least at this time, no actual conflict exists as the defense of all these individuals and the City is the same, they are all indemnified, and the only disagreement as between clients is as to the peripheral issue. There is disagreement as to that issue, i.e., when the Mayor was informed of the Prude incident, but that issue is not relevant or probative of any of the issues to be decided relative to either purported class or any of the causes of action alleged.

## CONCLUSION

There is no evidence of an apparent or actual conflict sufficient to warrant disqualification under *Dunton*. Moreover, there is no evidence nor could there be evidence that any privileged information was gained in the *Singletary v City of Rochester* matter, much less any information gained that might in any way be related to this action. Finally, the difference of opinion as to conveying information relating to the Prude case does not present a circumstance where it would impact either the nature or the vigor of the defense offered by counsel.

Finally, the City and its counsel acknowledge their continuing obligations to their respective clients and their unending obligation of fielty to each party represented as well as its fiduciary and professional obligations to its clients in the event of a conflict.

As such, the court can be satisfied in the continued representation of the parties at this juncture by the Corporation Counsel's office and plaintiffs' application should be denied.

DATED: March 4, 2025                             PATRICK BEATH, Corporation Counsel

                                                BY: *s/ Patrick Naylon*
                                                      PATRICK B. NAYLON, Esq., of Counsel
                                                      Attorneys for City Defendants
                                                      30 Church Street, Room 400A City Hall
                                                      Rochester, NY 14614
                                                      Telephone:  (585) 428-6906