UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HALL, *et al.*,

                          Plaintiffs,                      DECISION AND ORDER

              vs.                                     21-CV-6296-FPG-MJP

WARREN, et al.,

                          Defendants.
_____

**Pedersen, M.J.** Presently before the Court is Plaintiffs' oral motion to disqualify Corporation Counsel from representing Defendants Lovely Ann Warren ("Warren"), La'Ron Singletary ("Singletary"), and the City of Rochester on the ground that several conflicts exist. (Tr. of Feb. 11, 2025 Proceedings at 67:12–68:17, ECF No. 208.) After reviewing the briefing submitted by both parties and having held a *Dunton*[1] hearing the Court concludes that there is no conflict of interest and that Corporation Counsel can continue to represent all three parties. Accordingly, the Court **DENIES** Plaintiffs' oral motion for disqualification.

## FACTUAL BACKGROUND

The Court assumes the parties' familiarity with the facts of this case and will not repeat them here except as relevant to whether a conflict exists with Corporation Counsel representing the City of Rochester, Warren, and Singletary.

---

[1] *Dunton v. Suffolk County*, 729 F.2d 903 (2d Cir. 1984).

1

During a conference with the Court on February 11, 2025, the parties discussed the issue of whether Corporation Counsel has a conflict of interest in representing the City of Rochester, Warren, and Singletary, as Plaintiffs have asserted. (Tr. of Feb. 11, 2025 Proceedings at 67:12–68:17.) Plaintiffs indicated that they thought it was "necessary to make a motion to disqualify" and requested a *Dunton* hearing to determine whether disqualification is appropriate based on a conflict of interest. (*Id.* at 68:1–69:3.) Plaintiffs indicated that they raised this concern because they are "interested in ensuring the integrity of any final resolution" of this matter. (*Id.* at 70:21–71:2.) The Court scheduled a *Dunton* hearing to take place on March 11, 2025, and directed the parties to submit briefing on the *Dunton* issue prior to the hearing. (*Id.* at 73:20–74:13; 80:7–81:1.) The Court held the *Dunton* hearing on March 11, 2025, at which all parties were present. (Minute Entry for Proceedings, Mar. 11, 2025, ECF No. 209.)

In their pre-hearing briefing Plaintiffs assert as follows:

> There are three apparent conflicts: (1) Warren, Singletary and the City have accused each other of making false statements concerning material issues in this lawsuit, raising serious concerns about their continued joint representation; (2) in light of Plaintiffs' municipal liability claims, the City, Warren and Singletary will, most likely, seek to interpose conflicting defenses, rendering their joint representation problematic; and (3) Patrick Beath's prior role as a material witness in matters relating to this case presents a likely witness-advocate concern.[2]

---

[2] Plaintiffs aver that this potential conflict is not currently ripe and only raised it to avoid waiving it. (Pls.' Mem. of Law at 19, ECF No. 198.) Given that this issue is not ripe the Court will not address it at this time.

(Pls.' Mem. of Law at 1, ECF No. 198.) Plaintiffs' concern with respect to the first perceived conflict is that "Warren, Singletary, and the City have accused each other, very publicly and under oath, of dishonesty, including about issues that are significant to Plaintiffs' case." (*Id.* at 7.) Plaintiffs assert that

> Singletary and Warren have already provided irreconcilable accounts of several critical events surrounding the death of Daniel Prude and the subsequent cover-up—including openly attempting to shift the blame to the other. Indeed, Singletary testified that Warren and other City officials "orchestrated the cover-up" and then set him up to be the fall guy. Warren and Singletary have also each explicitly called the other a liar (with the City endorsing the view that Singletary previously perjured himself regarding the events surrounding Daniel Prude's death).

(*Id.* at 9.)

Plaintiffs contend that the second potential conflict issue—that Warren, Singletary, and the City may raise conflicting defenses—implicates *Dunton*. Plaintiffs assert that "[t]he problem of maintaining joint representation is the obvious concern that the corporation counsel will inevitably prioritize the City's interest over the interest of its former employees like Ms. Warren and Mr. Singletary." (Tr. at 12:1–5.)

While Defendants do not argue that Warren and Singletary "definitely disagree as to who told what when" with regards to the Daniel Prude incident they assert that they are in agreement that the policies, practices, and procedures at the time of that incident were in accordance with the law. (Tr. at 23:12–18; 26:12–16.) Defendants assert that the "who told what when is a credibility issue" not a conflict. (Tr. at 25:22–26:2.)

3

At the *Dunton* hearing Plaintiffs' counsel explained that there are two "buckets" of Plaintiffs. The first bucket consists of those Plaintiffs who claim that they have been "subjected to more excessive force by the RPD because they are people of color," which is encompassed in Plaintiffs' first *Monell* claim.[3] (Tr. at 8:10–24.)

In addressing the first bucket of Plaintiffs[4], Defendants assert that since these Plaintiffs are seeking an injunction and declaratory relief any such relief, if granted, would only be against the City, not against Warren or Singletary. (Tr. at 22:16–22; 40:3–11.) Neither Warren nor Singletary is still employed by the City. (Tr. at 41:4–5.) Accordingly, Defendants contend that there is no conflict in representing them all.

---

[3] Plaintiffs aver that the following claims remain in this action:

Plaintiffs' *Monell* claim against the City for the Rochester Police Department's (RPD) "practice of using disproportionate force against people of color" (First Claim); Plaintiffs' *Monell* claim against the City alleging it was "deliberately indifferent and failed to discipline officers who used excessive force" (Second Claim); Plaintiffs' *Monell* claim that "the City violated the First, Fourth, and Fourteenth Amendments during the Summer and Fall 2020 Racial Justice Protests" (Third Claim); Plaintiffs' claims of excessive force against the individual Defendants (Seventh Claim); Plaintiffs' civil rights conspiracy claim against the City, Warren, and Singletary (Eighth Claim); and Plaintiff's claim for failure to intervene to prevent civil rights conspiracy against the City, Warren, and Singletary (Ninth Claim). *See* ECF No. 94 (MTD Order) at 13, 15, 19; ECF No. 47 (Am. Compl) ¶¶ 423–449, 476–500.

(Pls.' Mem. of Law at 1–2.)

[4] The second bucket of Plaintiffs' claims relate to the force used at the 2020 protests as well as injunctive relief. (Tr. at 26:17–24; Defs.' Mem. of Law at 3, ECF No. 203.)

4

Defendants also assert that the City is indemnifying Warren and Singletary and that their "defense is unified . . . that the policies, practices and procedures of the City of Rochester Police Department were in accordance with law."[5] (Tr. at 25:10–21.)

## ANALYSIS

"The authority of federal courts to disqualify attorneys derives from their inherent power 'to preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. of City of N.Y. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). Motions to disqualify are generally viewed with disfavor, and "[w]hether to grant a motion to disqualify is committed to the discretion of the court." *Wieme v. Eastman Kodak Co.*, No. 02–CV–6021L, 2004 WL 2271402, at *1 (W.D.N.Y. Sept. 7, 2004). In evaluating a motion to disqualify, a court must balance "'a client's right freely to choose his counsel' against 'the need to maintain the highest standards of the profession.'" *Hempstead Video*, 409 F.3d at 132 (citations omitted).

A party moving for disqualification carries "a 'heavy burden' and must satisfy 'a high standard of proof.'" *Wieme*, 2004 WL 2271402, at *1 (quoting *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791, 794 (2d Cir. 1983)). Indeed, a court faced with a disqualification motion must recognize that "disqualification has an immediate adverse effect on the client by separating him from counsel of his choice, and that

---

[5] Plaintiffs contend that "the City [ ] indemnifying Mayor Warren and Chief Singletary . . . doesn't settle the conflict because a finding of liability against either of them individually would have significant consequences beyond the mere payment of judgment" such as "substantial reputational and professional repercussions." (Tr. 13:5–16.)

disqualification motions are often interposed for tactical reasons." *Bd. of Educ. of City of N.Y.*, 590 F.2d at 1246. "Speculation regarding the divulging of client confidences will not suffice to grant a motion to disqualify." *Hickman v. Burlington Bio–Med. Corp.*, 371 F. Supp. 2d 225, 229 (E.D.N.Y. 2005). "At the same time, however, the Second Circuit has instructed that if there are doubts about the matter, those doubts should be resolved in favor of disqualification." *Wieme*, 2004 WL 2271402, at *2.

The standard for disqualification depends on whether the representation is concurrent or successive. *Hempstead Video*, 409 F.3d at 133. For concurrent representation, it is "*prima facie* improper" for an attorney to simultaneously represent a client and another party with interests directly adverse to that client. *Id.* Under those circumstances, a "*per se*" standard applies and the attorney must be disqualified unless he is able to demonstrate "at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation." *Id.* (emphasis in original). In contrast, where the representation is successive, an attorney may be disqualified where there is a substantial relationship between the subject matter of the prior representation and the current matter, and the attorney whose disqualification is sought had access to or was likely to have had access to relevant privileged information during that prior representation. *Id.* The case at bar involves concurrent representation and will therefore be analyzed under that standard.

The Court reiterates that disqualifying a party's chosen counsel is disfavored. To the extent that Plaintiffs contend that a conflict exists because of accusations

6

amongst the parties in the aftermath of the Daniel Prude incident the Court views this as a credibility issue to be explored at trial as opposed to creating any conflict of interest.

With respect to the *Dunton* issue Defendants have clearly represented that Warren and Singletary "are in agreement as to the policies, procedures and tactics used at the 2020 protests, as well as the policies, practices and procedures of the Rochester Police Department governing the use of force for the period 2018 until the earlier of commencement or their departure from City government."[6] (Defs.' Mem. of Law at 4, ECF No. 203.) In addition, Defendants have indicated that "[a]s to any *Monell* claims against the City, as well as Mr. Singletary and Ms. Warren in their individual or personal capacity, the City of Rochester agrees that they both were at all times acting within the scope of their employment and in accordance with the policies, practices and procedures of the City of Rochester." (*Id.*) Finally, Defendants stated that the City is indemnifying Warren and Singletary.

In view of these clear representations, Plaintiffs' speculation that "[i]t is difficult to see how the City will *not* argue that actions (or inactions) taken by Warren and Singletary were outside the scope of their employment and *not* reflective of official policy" does not satisfy their heavy burden as the party seeking to disqualify Corporation Counsel. (Pls.' Mem. of Law at 17, ECF No. 198.) It does not appear that the City, Warren, or Singletary intend to raise any conflicting defenses. Under these

---

[6] It is unclear what Defendants mean by "commencement." However, the Court surmises the Defendants are referring to the commencement of this action.

circumstances the Court finds that Corporation Counsel does not have any conflict in representing all three parties.

In addition, during the *Dunton* hearing it did appear, as Defendants assert, that Plaintiffs were largely concerned that there was a conflict with Corporation Counsel representing the City, Warren, and Singletary with respect to Plaintiffs' first *Monell* claim for the first class of Plaintiffs that seeks injunctive and declaratory relief. The Court agrees with Defendants that the only client encompassed by this claim is the City. The Court does not believe there exists a conflict if Corporation Counsel represents the City, Warren, and Singletary.

## CONCLUSION

For the forgoing reasons the Court **DENIES** Plaintiffs' oral motion to disqualify Corporation Counsel from representing Defendants Lovely Warren, La'Ron Singletary, and the City of Rochester.

**IT IS SO ORDERED.**

DATED:   April 8, 2025
         Rochester, New York

_____
MARK W. PEDERSEN
United States Magistrate Judge